BOLGER, Chief Justice.
I. INTRODUCTION
The superior court found Deverette and Johnny Williams liable for defrauding Johnny's employer, Violeta Baker, after concluding that both owed her fiduciary duties and therefore had the burden of persuasion to show the absence of fraud. The court totaled fraud damages at nearly five million dollars and trebled this amount under Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA). After final judgment was entered against Deverette and Johnny, Johnny died. Deverette now appeals her liability for the fraud. We affirm Deverette's liability for the portion of the fraud damages that the superior court otherwise identified as her unjust enrichment. But we reverse the superior court's conclusion that she owed Baker a fiduciary duty, and we reverse the UTPA treble damages against Deverette. We vacate the superior court's fraud conclusion as to Deverette and remand for further proceedings.
II. FACTS AND PROCEEDINGS
Johnny Williams worked for Violeta Baker and her home healthcare services company, Last Frontier Assisted Living, LLC (Last Frontier), from 2004 to 2009. Baker hired Johnny to provide payroll, tax-preparation, bookkeeping, and bill-paying services. She authorized him to make payments from her accounts, both for tax purposes and business expenses, such as payroll. She also gave him general authority to access her checking account and to execute automated clearing house (ACH) transactions from her accounts. Finally, Baker allowed Johnny to write checks bearing her electronic signature.
Johnny did not invoice Baker for his labor. Rather he and Baker had a tacit understanding that he would pay himself a salary from Baker's payroll for his services. Baker and Johnny never discussed a precise amount for this salary, and Johnny did not keep a record of the hours he worked for Baker. Johnny presented himself as working for Baker in a personal capacity, but he also maintained the business Personalized Tax Solutions.[1]
Deverette Williams, Johnny's wife, was not an employee of Baker, Last Frontier, Johnny, or Personalized Tax Solutions. During Johnny's employment with Baker, Deverette primarily managed their home, though at times she also ran her own part-time businesses from home. Deverette discussed Johnny's business with him; she knew of advice he had given and services he had provided Baker. She witnessed Johnny using their home printer and computers in his work for Baker, and she relayed Baker's phone messages to him.
In 2009 the Internal Revenue Service (IRS) notified Baker that her third-quarter taxes had not been filed and she owed a penalty and interest. Baker contacted Johnny *338 to find out why the taxes had not been filed. When he could not produce a confirmation that he had e-filed them, Baker contacted her son for help. Baker's son discovered that several checks had been written from Baker's accounts to Personalized Tax Solutions and Deverette. Baker hired Mary Jones, a certified public accountant, to perform an audit of her accounts from 2004 to 2009.
Jones concluded that payments from Baker's accounts to Johnny, Personalized Tax Solutions, and Deverette totaled a little over one million dollars. Transfers from Baker to Deverette equaled $135,125. The final destination of some ACH transfers from Baker's accounts could not be verified; these "unidentified" transfers totaled $3,644,978. Jones estimated that Johnny's services over the time period could be valued between $47,500 and $55,000. Subtracting this from the total in transfers to Johnny, Deverette, and Personalized Tax Solutions resulted in an overpayment to the Williamses of approximately $950,000. Jones also documented damages resulting from mistakes in Johnny's tax filings for Baker.
In light of Jones's findings, Baker sued Johnny, individually and doing business as Personalized Tax Solutions and Personalized Tax Solutions, LLC, in October 2011.[2] Baker amended the complaint in December, adding Deverette as a defendant. The amended complaint alleged negligence, breach of contract, and unfair trade practices against Johnny, Personalized Tax Solutions, and Personalized Tax Solutions, LLC; unjust enrichment against Deverette; and fraud and punitive damages against all four defendants.[3]
In December 2014 Baker asked the court to shift to Johnny and Deverette the burden of proving by clear and convincing evidence (1) where Baker's lost money had gone and (2) that it was properly spent. Baker argued that this shift in the burden of proof was warranted because both Johnny and Deverette owed Baker fiduciary duties. In response the superior court issued an order for a two-part trial format. In "Phase I" of trial, Baker would have the burden of proving that a fiduciary relationship existed between one or both of the Williamses and Baker. If the court found any such fiduciary duty, in "Phase II" the burden would be on Johnny and/or Deverette to prove by clear and convincing evidence that they did not breach the duty. Otherwise the burden of proof would remain with Baker.
In Phase I of trial, Deverette and Johnny characterized the sums of money Johnny transferred to Deverette as "allotments" from his salary, i.e., portions of Johnny's lawful salary that were allotted and paid directly to Deverette. The court found that Johnny had a fiduciary duty to manage Baker's payroll and other funds to which he was given access; to record all related transactions; to provide competent payroll, IT, and tax advice; and to affirmatively advise Baker as to the limits of his fiduciary duty. The court found that Deverette did not owe Baker a direct fiduciary duty.
The court shifted the burden of proof to Johnny but not Deverette on all but Baker's fraud and unjust enrichment claims. With respect to the fraud claim, the court shifted the burden of proof to both Deverette and Johnny.[4] It stated that this claim had a "broader scope" than the others because it alleged the taking of money and improper use of those funds, not just their negligent mismanagement. According to the court, such alleged fraud would violate Johnny's "direct fiduciary duty" and Deverette's "indirect duty" to "not take any actions that would result in ... or assist in ... [Johnny] improperly using [Baker's] funds."
Phase II of trial took place in July 2015 and 2016. In June 2017 the superior court issued oral findings of fact and conclusions of law. It made extensive findings about Johnny's *339 culpability but very few findings about Deverette. It found that Johnny had committed negligence, breach of contract, UTPA violations, and fraud. The court concluded that Deverette was unjustly enriched by Johnny's payments to her from Baker's accounts. And it found that Deverette's acceptance of these funds was inconsistent with Johnny's fiduciary duties. The court concluded that both defendants had "acted in bad faith and with little regard to [Baker's] interests" and were liable for fraud. This fraud consisted of Johnny's misrepresentations about his competency and trustworthiness as a fiduciary and tax preparer. The court made no specific findings providing the basis for its conclusion that Deverette had also committed fraud.
In November 2017 the court adopted Jones's final damages calculation of $4,956,774. It trebled the damages since it concluded that the acts causing them were violations of Alaska's UTPA. The court entered a final judgment of $20,274,763.77 jointly and severally against the Williamses, individually and doing business as Personalized Tax Solutions and Personalized Tax Solutions, LLC.
Johnny died later in November 2017, and Deverette notified the court of this fact in December. In early 2018 she filed this appeal.
III. DISCUSSION
Deverette argues that the superior court erred in concluding she owed Baker fiduciary duties and that the record does not support her liability for the fraud claim. Reviewing the superior court's legal conclusions de novo and its factual findings for clear error,[5] we agree that the record does not support a conclusion that Deverette was a fiduciary of Baker. We reverse that conclusion and remand for further proceedings on the fraud claim.
A. The Superior Court Erred When It Concluded That Deverette Owed Fiduciary Duties To Baker.
The superior court concluded that Deverette owed an "indirect" fiduciary duty to Baker based on the following findings: first, that Deverette represented herself to Baker as an agent of Johnny on the jobs he performed; second, that Deverette knew of the scope of work performed by Johnny and of the level of trust placed in Johnny by Baker; and third, that Deverette knew that Baker trusted her to pass on correct and timely information and to not take actions that would be inconsistent with Johnny's fiduciary duties.
Having reviewed the entire record, we are left with a "definite and firm conviction" that the superior court was mistaken in reaching certain of these findings.[6] Specifically it erred by finding that Deverette represented herself as Johnny's agent in all the work he performed for Baker and by finding that Deverette knew Baker trusted her to not take actions inconsistent with Johnny's fiduciary duties. The evidence in Phase I of trial showed that while Deverette knew the scope of Johnny's fiduciary relationship with Baker, Deverette herself had never been an employee of Baker; had never assisted Johnny in, or been delegated, work for Baker; and was not perceived as Johnny's or Personalized Tax Solutions's agent by Baker. There was evidence that Deverette took Baker's calls for Johnny and delivered messages to him, but nothing established that she acted or represented herself as an agent of Johnny in his fiduciary capacities. And there was also no evidence that Baker had come to trust Deverette as a co-fiduciary with Johnny. It was thus clear error for the court to find that Deverette generally represented herself as Johnny's agent and to find that she was aware of elevated trust placed in her by Baker. We reverse these findings.
The findings that remain do not support the court's conclusion that Deverette owed fiduciary duties to Baker.[7] We have *340 stated that a fiduciary relationship "exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence."[8] "Fiduciary relationships are generally defined by a level of trust beyond that in ordinary business relationships,"[9] and "[l]oyalty and the disavowal of self interest are hallmarks of the fiduciary's role."[10] The factual findings supported by the record do not establish the existence of such a relationship between Deverette and Baker. And since the record contains no evidence supporting such a relationship, we reverse the superior court's erroneous conclusion.
Reversing the superior court's fiduciary duty conclusion also requires us to reverse its ruling that shifted the burden of proof on Baker's fraud claim to Deverette. In a civil action, trial courts may shift the burden of proof to the defendant if the defendant is a fiduciary of the plaintiff.[11] Under such circumstances burden shifting helps ensure that those entrusted with the weighty obligations of a fiduciary are held responsible for those duties.[12] Absent special circumstances, however, burden shifting is not appropriate when there is no fiduciary relationship, and there were no such circumstances here. Because the superior court erred in concluding that Deverette owed fiduciary duties to Baker, its reversal of the burden of proof was also erroneous.
B. We Remand The Fraud Claim.
The superior court made Deverette liable for the entire judgment, but its findings only referenced Deverette with respect to Baker's unjust enrichment and fraud claims. Deverette does not dispute her liability for the approximately $135,000 awarded for unjust enrichment. She does, however, contest her liability for the remaining damages, which are encompassed by the fraud claim.[13] These are the overpayments made to Johnny and Personalized Tax Solutions, the unverified ACH transfers, and the damages resulting from improper tax filing, all trebled as violations of the UTPA. Deverette argues that she is not responsible for these damages because she is not liable for fraud. Baker claims that Deverette can be found jointly liable, either as an agent who assisted Johnny in his wrongdoing or as a joint tortfeasor in Johnny's misconduct.[14]
Because we have reversed the superior court's burden-shifting ruling, on remand the burden will remain with Baker to prove by a preponderance of the evidence that Deverette is liable for fraud. Baker may attempt to do so under a theory of direct common law fraud or on a theory that Deverette is jointly liable for Johnny's fraud. Should the superior court on remand find that Deverette is liable *341 as a co-conspirator or joint tortfeasor in Johnny's fraud, it should be mindful that co-conspirators and joint tortfeasors are liable only for the acts of their collaborators that fall within the scope of their common tortious design.[15]
C. We Reverse The Treble Damages Verdict Against Deverette.
The superior court ruled that Deverette's fraud liability was sufficient to support UTPA liability. But Baker conceded at oral argument that Deverette was not liable under the UTPA. Therefore, we also reverse the court's treble damages verdict against Deverette.
IV. CONCLUSION
We AFFIRM Deverette's unjust enrichment liability. We REVERSE the superior court's fiduciary duty conclusion and the UTPA treble damages. We VACATE the superior court's fraud conclusion as to Deverette and REMAND for further proceedings consistent with this opinion.

Johnny filed to establish Personalized Tax Solutions as a limited liability company in early 2011.

Baker's company, Last Frontier Assisted Living, was also a plaintiff in the lawsuit. For convenience we refer to the two plaintiffs collectively as "Baker."

The superior court entered default judgment against Personalized Tax Solutions, LLC in October 2012. Because the Williamses chose to represent themselves and neither was a licensed attorney, they could not file an answer on behalf of the limited liability company.

Because unjust enrichment liability does not depend on the existence of a fiduciary duty, the court did not reverse the burden of proof on this claim.

Offshore Sys.-Kenai v. State, Dep't of Transp. & Pub. Facilities , 282 P.3d 348, 354 (Alaska 2012) (citing Labrenz v. Burnett , 218 P.3d 993, 997 (Alaska 2009) ).

Labrenz , 218 P.3d at 997.

Whether a fiduciary relationship exists is a legal question reviewed de novo. Thomas v. Archer , 384 P.3d 791, 795 (Alaska 2016) ; see also Munn v. Thornton , 956 P.2d 1213, 1220 (Alaska 1998) ("We exercise our independent judgment in reviewing questions of law, such as whether a cost-plus contract creates a fiduciary relationship.").

Seybert v. Cominco Alaska Expl. , 182 P.3d 1079, 1090 (Alaska 2008) (quoting Munn , 956 P.2d at 1220 ).

Munn , 956 P.2d at 1220 (citing Fiduciary duty , Black's Law Dictionary (6th ed. 1990)).

Id. (alteration in original) (quoting Wagner v. Key Bank of Alaska , 846 P.2d 112, 116 (Alaska 1993) ).

See Miller v. Sears , 636 P.2d 1183, 1190 (Alaska 1981).

See id . (stating that once a fiduciary relationship is established, burden shifting is "in accord with general tenets of the duties of a fiduciary and ensures that [the fiduciary] discharges his general duties of loyalty and fair play").

In her reply brief, Deverette also raises a claim for apportionment of damages under AS 09.17.080, but this claim was not raised in the superior court. We will not address this claim on appeal because it was not raised in her opening brief. See Maines v. Kenworth Alaska, Inc. , 155 P.3d 318, 326 (Alaska 2007). But the superior court on remand is free to consider whether to allow Deverette to assert this claim.

Baker also argues that Deverette is liable for Johnny's misconduct because the judgment is a "marital debt" and because Deverette, as Johnny's surviving spouse, will inherit his judgment debt. But whether Johnny's judgment debt would be classified as "marital" in a divorce proceeding or whether it would be inherited by Deverette in a probate proceeding are questions irrelevant to the central issue in this appeal: whether Deverette is legally culpable for the fraud.

See Halberstam v. Welch , 705 F.2d 472, 484 (D.C. Cir. 1983) (stating that civil co-conspirators are liable for "acts pursuant to, in furtherance of, or within the scope of the conspiracy"); Restatement (Second) of Torts § 876 cmt. a ( Am. Law Inst. 1979) ("Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others.").